## Proposed Presidential Proclamation Entitled "Registration Under the Military Selective Service Act"

[The following memorandum was prepared by the Office of Legal Counsel pursuant to its responsibility under Executive Order No. 11,030 for approving all executive orders and presidential proclamations for form and legality. On the constitutional issue raised by the proposed proclamation, it notes the conclusion reached in an earlier opinion of the Office that a male-only draft is constitutional. On the statutory question, it concludes that the President is authorized under the Selective Service Act to require the registration, by age group, of some but not all males between the ages of 18 and 26.]

June 30, 1980

### MEMORANDUM

The attached proposed proclamation was submitted informally to the Office of Management and Budget by the Selective Service System. It was revised in the Office of Management and Budget and has been forwarded for consideration of this Department as to form and legality by that Office with the approval of the Director. Suggestions made by this Office were incorporated during the drafting process.

The proposed proclamation would invoke the President's power under § 3 of the Military Selective Service Act, as amended [the Act], 50 U.S.C. App. § 453, to require male citizens of the United States and other male persons residing in the United States between the ages of 18 and 26 and not exempt under the Act to register with the Selective Service System. It would end the hiatus in registration caused by President Ford's Proclamation No. 4360 of March 29, 1975 ("Terminating Registration Procedures Under the Military Selective Service Act, as Amended").

The proclamation would require the registration of all nonexempt males who were born on or after January 1, 1960 and have reached the age of 18. No other persons would be required to register. This designation of the persons required to register raises constitutional and statutory issues.

The constitutional question is whether requiring men but not women to register constitutes impermissible discrimination based on sex. This Office has previously addressed that issue and has concluded that a male-only registration is constitutional. Memorandum from Assistant Attorney General Harmon to Deputy Director White, Office of Man-

705

agement and Budget, "Constitutionality of All-Male Draft Registration," January 31, 1980.*

The statutory question involves the President's power to require the registration, by age group, of some but not all males between the ages of 18 and 26. An argument can be made that the President's power is limited to requiring the registration of the entire group; that he may not, as the proclamation would, limit registration to 18, 19, and 20 year olds.

Section 3 of the Act provides in pertinent part that

> it shall be the duty of *every* male . . . who, on the day or days fixed for the first or any subsequent registration, is between the ages of 18 and 26, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

50 U.S.C. App. § 453 (emphasis added). This language, on its face, can be read as evincing a congressional intent that all persons within the age group delineated be registered. Moreover the phrase "at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President" does not, in terms, give the President discretion to exclude groups in the 18-to-26 range from the duty imposed on *every* male in that range.

The legislative history of § 3 reveals that

> The Senate bill provided for the registration of male persons between the ages of 18 and 26, and contained no specific provision authorizing registration by age groups. The House amendment provided for the registration of male persons between the ages of 18 and 31, and specifically authorized the President to provide for registration by age groups.

H. Conf. Rep. No. 2438, 80th Cong., 2d Sess. 44 (1948). The conference adopted the Senate version, the version devoid of specific authority for the President to provide for registration by age groups. *Id.* This was in contradistinction to the course that Congress had taken in the predecessor to § 3, the model for the House version. The predecessor contained the specific authority, in the exact language omitted from § 3 in 1948. *Compare* § 2 of the Selective Training and Service Act of 1940, 54 Stat. 885, *with* § 3 of H.R. 6401, 80th Cong., 2d Sess. (1948), at 94 Cong. Rec. 8395 (1948).[1]

---

*NOTE: In *Rostker* v. *Goldberg*, 453 U.S. 57 (1981), the Supreme Court upheld the constitutionality of male-only draft registration. Ed.

[1] Although the Selective Training and Service Act of 1940 contained the specific authority for registration by age groups, a contemporaneous interpretation by the Attorney General concluded that

Continued

In light of the language of § 3 and its legislative history, this Office orally advised the Office of Management and Budget earlier this year that it would be highly desirable to have some congressional action confirming his authority before the President issued a proclamation calling for the registration of persons by age groups consisting of less than the entire 18-to-26 range. Since we provided that advice, Congress, at the request of the President, and fully informed of the President's plan to register, by age group, less than the entire range has, after lengthy and considered debate, appropriated for this registration funds sufficient only to register the number of males in the age groups named in the proclamation. We believe that this congressional action is sufficient to confirm the President's authority.

The proclamation would require persons born in 1960 to register during a six day period beginning July 21, 1980. Those born in 1961 would register between July 28, 1980 and August 2, 1980, and those born in 1962 between January 5, 1981 and January 10, 1981. The proclamation would also establish a continuous registration process, obligating persons to register as they turn 18, upon losing an exempt status, and, with respect to noncitizens, either as they return to residence in the United States from abroad or as they enter to reside. Aliens in processing centers on the days fixed for their registration would be required to register after their release. A range of days to register would be provided those subject to the continuous registration program. Provision would be made for the late registration of those unable to register at the proper time due to some condition beyond their control, such as hospitalization or incarceration.

Registration in the United States would be at any United States Post Office. Registration overseas—available to citizens only—would be before a consular officer of the United States or other designated

---

the President was nonetheless required to register, within a reasonable time, all persons within the 21-to-36 range set in that Act by Congress. Regarding the first registration proclamation under the 1940 act, the Attorney General wrote the President:

It will be noted that on page 3 of the draft, in paragraph numbered 2, the higher age limit of those to be registered on the sixteenth day of October is left blank. This was done out of deference to the wishes of the War Department who I understand will urge that such age limit for the first draft be the thirty-first anniversary of the day of birth.

The language of the act is ambiguous and I am not prepared to say that you may not require registration of persons of different age groups on different registration days. The statute as a whole, however, definitely contemplates that all persons between the ages of twenty-one and thirty-six shall be registered, and under the constitutional requirement that the President shall take care that the laws are faithfully executed, it is, in my opinion, your duty to see that this is done within a reasonable time. If, therefore, the age limit inserted in the blank above indicated is other than "thirty-sixth" you should, within a reasonable time, set another registration date or other registration dates for the purpose of the registration of all persons falling within the age limits prescribed in the statute. What is a reasonable time for such purposes depends, of course, upon the exigencies under existing conditions.

Letter to the President from the Attorney General, of September 16, 1940. (The decision made was to register the entire group. *See* Proclamation No. 2425 of September 16, 1940 ("Registration Day"), 3 C.F.R. at 185 (1938–43 Comp.).)

person at any United States Embassy or Consulate. Hours for registration in the United States would be the business hours of the Post Offices. Hours for registration overseas would be set by the Department of State. In utilizing the Post Office and the Department of State to assist the Selective Service in registering persons, the President would be exercising his authority under § 10(b)(5) of the Act, 50 U.S.C. App. § 460(b)(5), "to utilize the services of any or all departments and any and all officers or agents of the United States . . . in the execution of this title [§§ 451 through 471a, 50 U.S.C. App.]."

The proclamation would direct persons required to register to comply with the registration procedures and other rules and regulations prescribed by the Director of Selective Service, to identify themselves when reporting for registration, and to keep the Selective Service System informed of their current addresses after registration. It would urge everyone to cooperate with and to assist those required to register. Executive agencies would be required, upon request of the Director, to assist, to the extent permitted by law, the Selective Service System in carrying out the purposes of the proclamation.

This Office has been informed by the Office of the Counsel to the President that that Office intends to have a reference to the congressional resolution making the funds for this registration available inserted in the proclamation's preamble. No such reference is contained in the proposed proclamation as transmitted to this Department by the Office of Management and Budget. Its inclusion will not affect the legality of the proclamation.

The proposed proclamation is acceptable as to form and legality.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*